IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE:  MARGARET B. HALL                                                      NO. 20-12866-JDW

COMMUNITY BANK OF MISSISSIPPI                                                 MOVANT

VS.

MARGARET B. HALL, DEBTOR,
AND WILLIAM L. FAVA, TRUSTEE                                                  RESPONDENTS

### MOTION TO ABANDON COLLATERAL AND LIFT STAY

Community Bank of Mississippi ("Bank") brings this motion to abandon collateral and lift and terminate the automatic stay of 11 U.S.C. § 362.

1. The Debtor is indebted to the Bank under Promissory Note no. ***6332, a copy of which is attached as Exhibit "A". As of October 5, 2020, the balance due was $312,202.64 plus interest accruing thereafter, attorney fees and expenses. The Note has matured and is in default.

2. As collateral for the indebtedness due, the Debtor pledged to the Bank certain real property and improvements located at 109 Glen Eagle Road, Oxford, Mississippi as evidenced by the Deed of Trust attached as Exhibit "B".

3. According to the Debtor's schedules, the value of the property is $408,360.00 and is also encumbered by a deed of trust to Loancare with a balance of $323,092.97.

4. The Debtor has failed to provide the Bank with adequate protection as required by 11 U.S.C. § 362 and § 363 and the Bank's collateral is not necessary for an effective reorganization. There is no equity in the Bank's collateral for the benefit of the Debtor or the Estate.

5. The Bank requests that upon termination of the automatic stay, such termination shall become immediately effective and enforceable and shall not be stayed by Bankruptcy Rule 4001 (a)(3).

WHEREFORE, PREMISES CONSIDERED, Community Bank of Mississippi requests that this Court abandon its collateral and lift and terminate the automatic stay of 11 U.S.C. § 362 and grant such other relief as is necessary under the circumstances.

DATED: October 5, 2021

**COMMUNITY BANK OF MISSISSIPPI**

By:   /s/ Jeff Rawlings
       Its Attorney

## CERTIFICATE OF SERVICE

I served a copy of the foregoing motion on October 5, 2021 via the ECF notification service upon Karen B. Schneller, Natalie K. Brown, William L. Fava and the Office of the U.S. Trustee.

/s/ Jeff Rawlings
Jeff Rawlings

Jeff Rawlings
Rawlings & MacInnis, P.A.
P.O. Box 1789
Madison, MS 39130-1789
601-898-1180
jeff@rawlingsmacinnis.net
MSB # 4642

Exhibit A



COMMUNITY BANK

## PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $299,930.60 | 11-29-2019 | 01-29-2020 | ●6332 | 1C2B / 131 | ●0007 | JKW | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

Borrower: Margaret B Hall
109 Glen Eagle Rd
Oxford, MS 38655-2611

Lender: Community Bank of Mississippi
Hernando Office
323 East Third Street
Forest, MS 39074

Principal Amount: $299,930.60  Interest Rate: 5.950%  Date of Note: November 29, 2019

PROMISE TO PAY. I ("Borrower") promise to pay to Community Bank of Mississippi ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Ninety-nine Thousand Nine Hundred Thirty & 60/100 Dollars ($299,930.60), together with interest on the unpaid principal balance from November 29, 2019, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 5.950% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

PAYMENT. I will pay this loan in one principal payment of $299,930.60 plus interest on January 29, 2020. This payment due on January 29, 2020, will be for all principal and all accrued interest not yet paid. In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning December 29, 2019, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied to any interest; then to principal; then to any late charges; and then to any other charges. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/365 basis; that is, by applying the ratio of the interest rate over the number of days in a year (365 for all years, including leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

PREPAYMENT. I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Community Bank of Mississippi, 323 East Third Street Forest, MS 39074.

LATE CHARGE. If my payment is more than 15 days late, I will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon maturity, whether scheduled or accelerated by Lender because of my default, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

DEFAULT. I will be in default under this Note if any of the following happen:

  Payment Default. I fail to make any payment when due under this Note.

  Break Other Promises. I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

  False Statements. Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

  Death or Insolvency. Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

  Taking of the Property. Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

  Defective Collateralization. This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

  Collateral Damage or Loss. Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

  Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

  Insecurity. Lender in good faith believes itself insecure.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Mississippi.

CHOICE OF VENUE. If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of Rankin County, State of Mississippi.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender has the full right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

In addition to Lender's right of setoff, I hereby grant to Lender a security interest in all of my accounts with Lender (whether checking, savings, or some other account, including all accounts I hold jointly with someone else and all accounts I may open in the future) to cover any debt I owe Lender, of whatever type, whether I am a borrower, guarantor or otherwise. This security interest may not apply to my account if (a) it is an

**PROMISSORY NOTE**
**(Continued)**

Loan No: ●6332                                                                                                                                             Page 2

of withdrawal arises only in a representative capacity.

**COLLATERAL.** I acknowledge this Note is secured by Deeds of Trust dated 07/23/2009 and Modification Deeds of Trust dated 08/27/2019.

**PRIOR NOTE.** Renewal of Note dated 08/27/2019 in the amount of $299,525.60.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

BORROWER:

x _Margaret B. Hall_
Margaret B Hall

---

Originator Names and Nationwide Mortgage Licensing System and Registry IDs:

Organization: Community Bank of Mississippi                          NMLSR ID: 402411

Individual: Jennifer Kay Ward                                                      NMLSR ID: 1107365

LaserPro, Ver. 19.2.0.042 Copr. Finastra USA Corporation 1997, 2019. All Rights Reserved. - MS M:\CFI\LPL\D20.FC TR-204407 PR-E23

Exhibit B



FILED
STATE OF MISSISSIPPI
LAFAYETTE COUNTY

2009 JUL 31 PM 12:02

CHANCERY CLERK
BY DC

Chancery Clerk
Lafayette County, Mississippi
I certify the instrument
was recorded on
JULY  31 2009  03:13:58PM
Instrument 200906584 Page  1 of  10
Witness my hand and seal
_____ D.C.
Sherry Wall

---

Space Above This Line For Recording Data

This document was prepared by COMMUNITY BANK, NORTH MISSISSIPPI, PO BOX 270, AMORY, Mississippi 38821, (662) 349-4200
Return To: Loan Administration, Community Bank, North MS, P. O. Box 270, Amory, MS 38821
**INDEXING INSTRUCTIONS.** Section 20, Township 8 South, Range 3 West

**Document Title:** Deed of Trust

**Grantor(s):** Samuel T Hall, 109 Glen Eagle Rd, Oxford, MS 38655-2611 and Margaret B Hall, 109 Glen Eagle Rd, Oxford, MS 38655-2611

**Lender/Grantee:** Community Bank, North Mississippi, P. O. Box 270, Amory, MS 38821, Telephone: 662-256-8461

**Legal Description:** Commencing at a concrete monument at the Southwest corner of the Northwest Quarter of Section 20, Township 8 South, Range 3 West; run thence along the section line South 88 degrees 54 minutes East a distance of 847.5 feet to a point; thence North 10 degrees 46 minutes East a distance of 501.5 feet to an iron pipe and the point of beginning of this lot description. Run thence North 73 degrees 21 minutes East a distance of 310.6 feet to an iron stake. Thence North 81 degrees 41 minutes East a distance of 175.0 feet to an iron pin. Thence along the perimeter of a 40 foot turn-around curving to the right a distance of 179.0 feet to the point of beginning. All lying and being in the Northwest Quarter of Section 20, Township 8 South, Range 3 West, Oxford, Lafayette County, Mississippi. Also known as Lot No. 76 of the Country Kermie Faust Tollison by deed from Paul T. Hendershot and wife, Theresa Lacy Hendershot, by deed dated May 31, 1974, and filed for record in Deed Book 298 at Page 165 in the Office of the Chancery Clerk of Lafayette County, Mississippi



1330705
Mississippi Recording Cover Sheet
MS/4MICHAEL000441700000215046072309Y         Wolters Kluwer Financial Services ©1996, 2009 Bankers Systems™     Initials



```
FILED
STATE OF MISSISSIPPI
LAFAYETTE COUNTY

2009 JUL 31  PM 12:02

CHANCERY CLERK
BY DC
```

---

Space Above This Line For Recording Data

This document was prepared by COMMUNITY BANK, NORTH MISSISSIPPI, PO BOX 270, AMORY, Mississippi 38821, (662) 349-4200

Return To: Loan Administration, Community Bank, North MS, P. O. Box 270, Amory, MS 38821

INDEXING INSTRUCTIONS. Section 20, Township 8 South, Range 3 West

# DEED OF TRUST

This Security Instrument secures a line of credit.

**DATE AND PARTIES.** The date of this Deed Of Trust (Security Instrument) is July 23, 2009. The parties, their addresses and phone numbers are:

**GRANTOR:**
SAMUEL T HALL
109 Glen Eagle Rd
Oxford, MS 38655-2611

MARGARET B HALL
109 Glen Eagle Rd
Oxford, MS 38655-2611

**TRUSTEE:**
THOMAS J. KING
P.O. Box 270
Amory, MS 38821

**LENDER:**
COMMUNITY BANK, NORTH MISSISSIPPI
Organized and existing under the laws of Mississippi
P. O. Box 270
Amory, MS 38821
Telephone: 662-256-8461

**1. CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Grantor's performance under this Security

---

1330705
Mississippi Deed Of Trust
MS/4MICHAEL00044170000021504607230Y

Wolters Kluwer Financial Services ©1996, 2009 Bankers Systems™

Initials _____
Page 1

Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

Commencing at a concrete monument at the Southwest corner of the Northwest Quarter of Section 20, Township 8 South, Range 3 West; run thence along the section line South 88 degrees 54 minutes East a distance of 847.5 feet to a point; thence North 10 degrees 46 minutes East a distance of 501.5 feet to an iron pipe and the point of beginning of this lot description. Run thence North 73 degrees 21 minutes East a distance of 310.6 feet to an iron stake. Thence North 81 degrees 41 minutes East a distance of 175.0 feet to an iron pin. Thence along the perimeter of a 40 foot turn-around curving to the right a distance of 179.0 feet to the point of beginning. All lying and being in the Northwest Quarter of Section 20, Township 8 South, Range 3 West, Oxford, Lafayette County, Mississippi. Also known as Lot No. 76 of the Country Kermie Faust Tollison by deed from Paul T. Hendershot and wife, Theresa Lacy Hendershot, by deed dated May 31, 1974, and filed for record in Deed Book 298 at Page 165 in the Office of the Chancery Clerk of Lafayette County, Mississippi

The property is located in Lafayette County at 109 Glen Eagle Rd, Oxford, Mississippi 38655-2611.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**2. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time will not exceed $300,418.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. SECURED DEBTS AND FUTURE ADVANCES.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

**A. Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. ●0705, dated July 23, 2009, from Grantor to Lender, with a maximum credit limit of $300,418.00 and maturing on July 15, 2019.

**B. Future Advances.** All future advances from Lender to Grantor under the Specific Debts executed by Grantor in favor of Lender after this Security Instrument. If more than one person signs this Security Instrument, each agrees that this Security Instrument will secure all future advances that are given to Grantor either individually or with others who may not sign this Security Instrument. All future advances are secured by this Security Instrument even though all or part may not yet be advanced. All future advances are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future advances in any amount. Any such commitment must be agreed to in a separate writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or limitations of Sections 19(a), 32, or 35 of Regulation Z.



1330705
Mississippi **Deed Of Trust**
MS/4MICHAEL00044170000002150460723O9Y           Wolters Kluwer Financial Services ©1996, 2009 Bankers Systems™           Initials _____ Page 2

C. **All Debts.** All present and future debts from Grantor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing. In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument. This Security Instrument will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. This Security Instrument will not secure any debt for which a security interest is created in "margin stock" and Lender does not obtain a "statement of purpose," as defined and required by federal law governing securities. This Security Instrument will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or limitations of Sections 19(a), 32, or 35 of Regulation Z.

D. **Sums Advanced.** All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**4. PAYMENTS.** Grantor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**5. WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, bargain and sell the Property in trust to Trustee, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:

  A. To make all payments when due and to perform or comply with all covenants.

  B. To promptly deliver to Lender any notices that Grantor receives from the holder.

  C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**8. DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**9. WARRANTIES AND REPRESENTATIONS.** Grantor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Grantor or to which Grantor is a party.

1330705
Mississippi Deed Of Trust
MS/4MICHAEL00044170000021504607 2309Y                Wolters Kluwer Financial Services ©1996, 2009 Bankers         Initials _____
                                                      Systems™                                                     Page 3

**10. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor will not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender will give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property will be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**11. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably assigns, grants, conveys to Lender as additional security all the right, title and interest in the following (Property): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (Leases); and rents, issues and profits (Rents). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender and effective as to third parties on the recording of this Assignment. As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

**13. DEED OF TRUST COVENANTS.** Grantor agrees that the covenants in this Security Instrument are material obligations under the Secured Debts and this Security Instrument. If Grantor breaches any covenant in this Security Instrument, Lender may refuse to make additional extensions of credit or may reduce the credit limit. By not exercising either remedy on Grantor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**14. DEFAULT.** Grantor will be in default if any of the following occur:

    **A. Fraud.** Grantor engages in fraud or material misrepresentation in connection with the Secured Debts.

    **B. Payments.** Any party obligated on the Secured Debts fails to make a payment when due.

    **C. Property.** Any action or inaction occurs that adversely affects the Property or Lender's rights in the Property.



1330705
Mississippi Deed Of Trust
MS/4MICHAEL00044170000002150046072309Y     Wolters Kluwer Financial Services ©1996, 2009 Bankers Systems™     Initials _____ Page 4

**15. REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debts and foreclose this Security Instrument in a manner provided by law if Grantor is in default. In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal will become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender will be entitled to, without limitation, the power to sell the Property.

If there is a default, Trustee will, at the request of Lender, advertise and sell the Property as a whole or in separate parcels as Trustee deems best at public auction to the highest bidder for cash. Trustee will give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by Mississippi Code § 89-1-55, in effect at the time of the proposed sale. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee.

Upon sale of the Property and to the extent not prohibited by law and after first paying all fees, charges and costs, Trustee will pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debts, paying the surplus, if any, to Grantor. Lender may purchase the Property. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title of the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The recitals in any deed of conveyance will be prima facie evidence of the facts set forth therein.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

**16. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Grantor breaches any covenant in this Security Instrument, Grantor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing, or protecting Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Grantor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Grantor. This Security Instrument will remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

**17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and will remain in full compliance with any applicable Environmental Law.

    C. Grantor will immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with any Environmental Law.

    D. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. INSURANCE.** Grantor agrees to keep the Property insured against the risks reasonably associated with the Property. Grantor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Grantor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld. All insurance policies and renewals will include a standard "mortgage clause" and, where applicable, "loss payee clause."

Grantor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Grantor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Grantor will immediately notify Lender of cancellation or termination of insurance. If Grantor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Grantor will pay for the insurance on Lender's demand. Lender may demand that Grantor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This

1330705
Mississippi Deed Of Trust
MS/4MICHAEL00044170000021504607230Y      Wolters Kluwer Financial Services ©1996, 2009 Bankers Systems™      Initials _____ Page 6

insurance may include coverages not originally required of Grantor, may be written by a company other than one Grantor would choose, and may be written at a higher rate than Grantor could obtain if Grantor purchased the insurance. Grantor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**20. ESCROW FOR TAXES AND INSURANCE.** Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. CO-SIGNERS.** If Grantor signs this Security Instrument but is not otherwise obligated to pay the Secured Debts, Grantor does so only to convey Grantor's interest in the Property to secure payment of the Secured Debts and Grantor does not agree by signing this Security Instrument to be personally liable on the Secured Debts. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws.

**22. SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, will succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

**23. WAIVERS.** Except to the extent prohibited by law, Grantor waives all appraisement rights relating to the Property.

**24. OTHER TERMS.** The following are applicable to this Security Instrument:

   **A. Line of Credit.** The Secured Debts include a revolving line of credit provision. Although the Secured Debts may be reduced to a zero balance, this Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**25. APPLICABLE LAW.** This Security Instrument is governed by the laws of Mississippi, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**26. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Grantor's obligations under this Security Instrument are independent of the obligations of any other Grantor. Lender may sue each Grantor individually or together with any other Grantor. Lender may release any part of the Property and Grantor will still be obligated under this Security Instrument for the remaining Property. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Grantor.

**27. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing and executed by Grantor and Lender. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.



1330705
Mississippi Deed Of Trust
MS/4MICHAEL00044170000021504607230 9Y    Wolters Kluwer Financial Services ©1996, 2009 Bankers Systems™    Initials ___  Page

**28. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

**29. NOTICE, FINANCIAL REPORTS, ADDITIONAL DOCUMENTS AND RECORDING TAXES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Grantor will be deemed to be notice to all Grantors. Grantor will inform Lender in writing of any change in Grantor's name, address or other application information. Grantor will provide Lender any financial statements or information Lender requests. All financial statements and information Grantor gives Lender will be correct and complete. Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Grantor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

**SIGNATURES.** By signing, Grantor agrees to the terms and covenants contained in this Security Instrument. Grantor also acknowledges receipt of a copy of this Security Instrument.

GRANTOR:

*/s/ Samuel T Hall/*
Samuel T Hall
Individually

*/s/ Margaret B Hall/*
Margaret B Hall
Individually

ACKNOWLEDGMENT.
(Individual)
County OF DeSoto, State OF Mississippi ss.
Personally appeared before me, the undersigned authority in and for the said county and state, on this 23rd day of July, 2009, within my jurisdiction, the within named Samuel T Hall, who acknowledged that he/she executed the above and foregoing instrument.

My commission expires:

Heather D. Hamblin
(Notary Public)

[Notary Seal: STATE OF MISSISSIPPI NOTARY PUBLIC ID # 93427 HEATHER D. HAMBLIN Commission Expires June 24, 2013 DESOTO COUNTY]

(Individual)
County OF DeSoto, State OF Mississippi ss.
Personally appeared before me, the undersigned authority in and for the said county and state, on this 23rd day of July, 2009, within my jurisdiction, the within named Margaret B Hall, who acknowledged that he/she executed the above and foregoing instrument.

My commission expires:

Heather D. Hamblin
(Notary Public)

[Notary Seal: STATE OF MISSISSIPPI NOTARY PUBLIC ID # 93427 HEATHER D. HAMBLIN Commission Expires June 24, 2013 DESOTO COUNTY]

1330705
Mississippi Deed Of Trust
MS/4MICHAEL00044170000002150046072309Y

Wolters Kluwer Financial Services ©1996, 2009 Bankers Systems™

Initials _____
Page 9